[No. 43113. En Banc. November 14, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. CURTIS EARL JOHNSTON, *Appellant*.

*Carl Maxey, Fredrickson, Maxey, Bell & Allison, Inc., P.S.,* and *Mark E. Vovos,* for appellant.

*Arthur R. Eggers, Prosecuting Attorney,* and *Jerry A. Votendahl, Deputy,* for respondent.

HAMILTON, J.—The defendant, Curtis Earl Johnston, appeals from a conviction of first-degree murder. We affirm the conviction.

On October 23, 1972, Mr. John Wylie was fatally shot while sitting in his home in Walla Walla County, Washington. The defendant was charged with the crime and entered a plea of not guilty. He refused to permit interposition of a plea of not guilty by reason of insanity. Although the defendant took the stand at trial and denied shooting Mr. Wylie, the evidence produced by the State overwhelmingly established his guilt.

Briefly stated, the evidence revealed that a few days before the shooting, defendant purchased a 12-gauge shotgun, a box of standard shotgun shells, and 10 ball or "deer slug" shells. Thereafter, he engaged in target practice with the gun.

Two days before the shooting, defendant visited the Wylie neighborhood and learned Mr. Wylie was away but would be returning on October 23. On the evening of October 23, the defendant came to the Wylie home and spoke briefly with Mr. Wylie, then departed. Subsequently, his

car was observed parked beside a vacant lot in proximity to the Wylie residence. Fresh footprints in the lot matched shoes owned by the defendant. When Mr. Wylie later appeared in a room with the curtain open, three shotgun shots, utilizing ball ammunition, were fired at relatively close range, two of which struck and killed Mr. Wylie. The spent shotgun shells found at the scene were shown to have been fired from defendant's gun. No motive for the killing was indicated.

The defendant, a native of Walla Walla and a college graduate, had a considerable history of mental problems. In 1963, he received a medical, though honorable, discharge from the United States Air Force on grounds of mental instability. Later in the same year, he shot and killed his father, following which he was hospitalized at Eastern State Hospital, Medical Lake, Washington, for treatment of a condition diagnosed as " '[s]chizophrenic reaction, chronic undifferentiated type.' " He remained hospitalized until March 1965, when he was discharged as recovered, and returned to Walla Walla to stand trial on second-degree murder charges arising out of the shooting of his father. At trial he was found to be insane at the time of the homicide, but sane at the time of trial and safe to be at large. Thereafter, he pursued his college studies and worked at various jobs.

The defendant was apprehended and charged with the slaying of Mr. Wylie on October 25, 1972. On December 20, 1972, he was transferred, on motion of the State and defense counsel, to Eastern State Hospital for observation and evaluation of his mental status and competency to stand trial. While so hospitalized, he attempted to kill a fellow patient and, on January 25, 1973, at the request of the hospital, was returned to Walla Walla County jail, with a diagnosis of "[s]chizophrenia, chronic undifferentiated type . . . , with a tendency towards acute schizophrenic episodes . . . associated with a significant potential of dangerousness." The hospital staff psychiatrist

further concluded that the defendant's mental capacity to understand the nature of the charges against him was "limited," and that he could not adequately assist in the preparation of his own defense or otherwise stand trial.

Subsequently, and again upon motion of the State and defense counsel, two additional psychiatrists, one on behalf of the State and one on behalf of defendant, were appointed by the court to examine the defendant and report on his competency to stand trial, as well as his ability to appreciate the consequences of entering an insanity plea or any other plea to the charge. The psychiatrist appointed on behalf of the State examined the defendant on February 24, 1973, and the one appointed on behalf of the defendant examined him on March 8, 1973. Both psychiatrists concluded and reported to the court and counsel that the defendant was then mentally capable of understanding the nature of the charge against him and the pleas available to him. In their opinion he was competent to aid in his defense and to stand trial. No formal evidentiary hearing was requested or held concerning defendant's competency to go to trial. Trial was set for and commenced on April 2, 1973.

On the morning of April 2 and before trial commenced, the trial judge, at the request of defendant's counsel, held an in-camera conference with the defendant and his counsel. At this time defense counsel explained to the trial judge that he had carried on extensive discussions with the defendant concerning the entry of a plea of not guilty by reason of insanity and that the defendant, after substantial consideration, had refused to permit the plea. Under questioning by his counsel and the trial judge, the defendant again rejected the plea stating that it constituted a tacit admission of guilt and was, therefore, inconsistent with his claim of innocence. Trial then proceeded concluding with a conviction.

On appeal defendant contends the trial court erred: (a) in proceeding to trial without an evidentiary hearing concerning defendant's competency to stand trial, and (b) in permitting defendant to decide that the defense of insanity

could not be raised. Akin to (b), defendant also claims error in allowing him to waive the defense of insanity without a determination that he did so knowingly, intelligently, voluntarily, and understandingly.

We find these contentions to be without merit.

■ The rule regarding allowance of a competency hearing to determine a defendant's ability to stand trial is stated in *State v. Tate*, 74 Wn.2d 261, 264, 444 P.2d 150 (1968). We there said:

> In *State v. Peterson*, 90 Wash. 479, 482, 156 Pac. 542 (1916), we said:
>> it is a matter within the discretion of the trial court as to whether or not it will enter upon an examination of the question of the sanity of the accused with a view of determining the right of the state to put him upon trial and render judgment against him.
>
> In that case there was little evidentiary basis for the claim of incompetency. Where such a basis exists, amounting to a "substantial question of possible doubt as to . . . competency to stand trial," then due process requires that the trial court resolve that doubt. See *Rhay v. White*, 385 F.2d 883 (9th Cir. 1967); *State v. Wilks*, 70 Wn.2d 626, 424 P.2d 663 (1967).

Concerning the nature and source of information upon which a trial court may resolve the question of competency to stand trial, *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967), notes:

> The trial judge may make his determination from many things, including the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.

Here, in resolving the issue of defendant's competency to stand trial, the trial court had before it virtually all of the elements mentioned. It had before it the written reports of three examining psychiatrists, only one of which opined that defendant's competency was limited. These reports were all available to counsel for the State and for the defendant. Neither counsel—both experienced attorneys—

considered the defendant to be incapable of going to trial, and defense counsel affirmatively asserted to the trial court that defendant was "a highly intelligent boy, and he's perfectly aware." At arraignment and during the in-camera conference on the morning of trial, the trial court had the opportunity to observe the defendant, his conduct, attitude, and demeanor as well as his ability to express himself. Under these circumstances we conclude that the trial judge did not abuse his discretion in not sua sponte conducting a formal evidentiary hearing concerning the defendant's competency to go to trial.

■ Turning then to defendant's contention that he should not have been permitted to refuse or waive a plea of not guilty by reason of insanity, we observed in *State v. Dodd, supra* at 519-20:

> If a defendant has sufficient intelligence to rationally choose whether to stand trial, plead guilty, or enter a plea of mental irresponsibility, the choice is his—not that of his attorney—for the constitution gives him the right to appear and defend either in person or by counsel. Const. art. 1, § 22. Whether the defendant possesses requisite mental competency to make a plea of guilty rests largely within the trial court's discretion, and acceptance and entry of the plea by the court will not be overturned except in clear cases of abuse of such discretion.

The record before us—consisting of the reports of the appointed psychiatrists and the transcribed record of the in-camera conference—fully and fairly demonstrates that the defendant was extensively apprised of the purport of a plea of not guilty by reason of insanity, including the impact which evidence of mental irresponsibility might have on the issue of premeditation. He was afforded ample time and opportunity to personally consider and evaluate the implications of such a plea and its effect upon the situation in which he found himself. He may very well have concluded that possible commitment to a penal institution was preferable to a possible commitment to a mental institution. In any event, the record sustains a conclusion that he vol-

untarily, knowingly, and adamantly refused to enter the plea or permit his counsel to do so on his behalf. The trial judge did not abuse his discretion in permitting the trial to proceed on the basis of defendant's not guilty plea alone.

■ Defendant next contends that, given his psychotic history, commitment to a penal institution amounts to cruel and unusual punishment in violation of the eighth amendment to the United States Constitution. He requests, upon this ground, a remand of this cause for a hearing on his sanity and need for treatment. He cites no direct authority for such a procedure at this stage of the proceedings, and we have found none.

Having determined that, based upon substantial evidence, the trial court properly assessed defendant's competency to stand trial and his capacity to intelligently and voluntarily waive the defense of insanity, we find no viable basis whatsoever, beyond appellate counsel's ingenious argument, upon which to predicate the requested remand. Accordingly, the request is denied.

Finally, defendant contends the trial court erred in failing to submit a proffered instruction defining second-degree murder. We find no merit in this contention.

■ It has long been the rule in this state that in a first-degree murder prosecution the lesser offense of second-degree murder need not be submitted to the jury absent evidence upon which the jury could predicate a finding of the lesser degree. *State v. Pepoon*, 62 Wash. 635, 114 P. 449 (1911); *State v. Mahoney*, 120 Wash. 633, 208 P. 37 (1922); *State v. Much*, 156 Wash. 403, 287 P. 57 (1930); *State v. Anderson*, 10 Wn.2d 167, 116 P.2d 346 (1941).

In the case at bench, defendant's sole contention and theory at trial was that he was elsewhere at the time Mr. Wylie was shot, hence was innocent of the charge. The State's evidence was to the contrary and demonstrated that if indeed it was the defendant who shot Mr. Wylie, the killing was deliberate and premeditated. The only evidence submitted to the jury that could be remotely related to defendant's mental capacity was that he had received a

medical discharge from the United States Air Force in 1963. The jury was not informed of the basis for the discharge. Under these circumstances, the trial court correctly ruled that the jury could not speculate upon the absence of premeditation. The sole question was whether the defendant was guilty as charged or not.

The verdict and judgment are affirmed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.