[No. 49016–3. En Banc. June 9, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY RICHARD JONES, *Petitioner.*

736

*McKay & Gaitan,* by *Jose E. Gaitan* and *Franco, Asia, Bensussen, Coe & Finegold,* by *Jon R. Zulauf,* for petitioner.

*Norm Maleng, Prosecuting Attorney, James E. Lobsenz, Special Deputy,* and *Deborah J. Phillips, Deputy,* for respondent.

UTTER, J.—This case presents the question of when a court may enter a plea of not guilty by reason of insanity (NGI) over a defendant's objection. We hold that, as long as the defendant is competent to stand trial, a court may rarely, if ever, take such action but that it does have a duty to assure the defendant's waiver of an NGI plea is intelligent and voluntary. Because the court in the present case did impose an NGI plea on a competent defendant and we find that error prejudicial, we reverse and remand for a new trial.

Petitioner, Larry Jones, was charged with second degree assault while armed with a firearm. At trial, he pleaded not guilty, claiming self–defense, and sought to forgo any NGI plea. At the prosecutor's request, however, and over Mr. Jones' strenuous objections, the trial court entered an NGI plea for him and appointed amicus counsel to argue the

insanity defense. The jury returned a verdict finding that Mr. Jones had committed the acts charged, but was insane at the time. The jury also recommended that Mr. Jones undergo less restrictive treatment than commitment to a state mental hospital; however, the court nonetheless ordered commitment because Mr. Jones indicated he would not cooperate with less restrictive treatment.

The alleged assault took place around midnight on March 2, 1980, at the University of Washington when Leif Granrud, a plainclothes campus police officer, drove up to Mr. Jones in an unmarked car. Both Mr. Jones and Officer Granrud agree that, when Officer Granrud questioned and approached Mr. Jones, Mr. Jones drew a pistol. They struggled when Officer Granrud grabbed the gun and during the struggle two shots were fired. Help arrived before anyone was hurt.

Outside this general outline, Mr. Jones' and Officer Granrud's versions of the incident differ. Mr. Jones testified that he drew his gun only because Officer Granrud, who never identified himself as a police officer, made a motion toward a gun on his hip. Officer Granrud, while conceding that he did not identify himself, denied making any motion for his gun. Further, he testified that Mr. Jones threatened to abduct him and that, when he asked how he could be sure that the gun was loaded, Mr. Jones threatened to shoot him and cocked the gun. Mr. Jones, on the other hand, testified that he only intended to hold Officer Granrud until help arrived and only threatened to shoot him in the leg if he didn't stay in the car where Mr. Jones had placed him. Mr. Jones also testified that the gun went off accidentally.

Because Mr. Jones told a rather unusual story about fearing for his life and planning to seek political asylum in Canada, the court ordered an inquiry into his competency to stand trial. Several psychiatrists, including one retained for the defense, examined Mr. Jones and concluded he was competent to stand trial; however, all but one also indicated to the court that they believed Mr. Jones was a para-

noid schizophrenic and was insane at the time of the alleged assault.

The court found Mr. Jones competent to stand trial. It then considered the State's motion that the court enter an NGI plea over Mr. Jones' objection. After hearing argument, the court granted that motion, concluding only that there was a "strong possibility" that Mr. Jones had a valid insanity defense and that there was a "substantial danger" he would be convicted if it was not asserted. The court also directed that amicus counsel be appointed to present the insanity defense. Finally, the court denied Mr. Jones' motion to bifurcate the trial into a "guilt"[1] phase and an insanity phase, though it did rule that the State could introduce evidence of insanity only after the defense presented its case.

The trial proceeded as ordered by the court and, after Mr. Jones presented his case, amicus counsel sought to prove he was legally insane. To do this, amicus counsel called two of the psychiatrists who had examined Mr. Jones to determine his competency, one a state psychiatrist and one the defense psychiatrist. Mr. Jones objected to the latter psychiatrist's testimony on the ground that it was subject to attorney–client privilege, but his objection was overruled.

The jury was instructed on both self–defense and insanity and returned the verdict described above. After being committed to Western State Hospital, Mr. Jones brought this appeal. The Court of Appeals affirmed in all respects (see *State v. Jones*, 32 Wn. App. 359, 647 P.2d 1039 (1982)) and Mr. Jones petitioned for review by this court.

I

A

Refusing to enter an NGI plea can be viewed as both

---

[1]The State has noted, with technical accuracy, that insanity also goes to guilt. We use the term "guilt" phase here to mean that phase of a bifurcated trial in which the jury decides whether the defendant has done the act charged and has no "noninsanity" defenses.

one–half of a guilty plea—since one is guilty only if one both does a proscribed act and is mentally responsible at the time—and as an aspect of defense strategy. The extent to which a defendant has a right to refuse to plead NGI is therefore intertwined with any right he has to plead guilty and/or control his own defense.

In Washington, both such rights exist. While there is no federal constitutional right to plead guilty (*North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)), such a right has been established in this state by court rule. CrR 4.2(a) confers upon informed defendants the right to plead guilty unhampered by the wishes of the State. *State v. Martin,* 94 Wn.2d 1, 5, 614 P.2d 164 (1980).

In addition, a defendant has a *constitutional* right to at least broadly control his own defense. In *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), the United States Supreme Court held that a defendant has a constitutional right to represent himself at trial: "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta,* at 819. Moreover, this right of self–representation does not arise as an aspect of the right to counsel, but is "independently found in the structure and history of the constitutional text." *Faretta,* at 819 n.15.

The language and reasoning of *Faretta* necessarily imply a right to personally control one's own defense. *See* Singer, *The Imposition of the Insanity Defense on an Unwilling Defendant,* 41 Ohio St. L.J. 637, 656 (1980); Chused, *Faretta and the Personal Defense: The Role of a Represented Defendant in Trial Tactics,* 65 Cal. L. Rev. 636, 651 (1977). In particular, *Faretta* embodies "the conviction that a defendant has the right to decide, within limits, the type of defense he wishes to mount." *United States v. Laura,* 607 F.2d 52, 56 (3d Cir. 1979). *See also. North Carolina v. Alford, supra* at 33 (quoting *Tremblay v. Overholser,* 199 F. Supp. 569, 570 (D.D.C. 1961) ("[courts] should not 'force any defense on a defendant in a criminal case,' particularly

when advancement of the defense might 'end in disaster. . . .'")); *Frendak v. United States*, 408 A.2d 364, 376 (D.C. 1979) (philosophy underlying *Alford* and *Faretta* is that "respect for a defendant's freedom as a person mandates that he or she be permitted to make fundamental decisions about the course of the proceedings").

The rights to plead guilty and control one's own defense are not absolute, however. A defendant exercising his right of self–representation, and thus by implication a defendant exercising his right to control his own defense, must "'knowingly and intelligently'" relinquish the benefits he forgoes and "should be made aware of the dangers and disadvantages" of his decision. *Faretta,* at 835. Similarly, a court may not accept a guilty plea unless it is intelligent and voluntary. *Alford,* at 31; *Boykin v. Alabama,* 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In addition, a defendant must be competent to make these intelligent and voluntary decisions. *See Sieling v. Eyman,* 478 F.2d 215, 221 (9th Cir. 1973) (competency to plead guilty); *State v. Kolocotronis,* 73 Wn.2d 92, 101, 436 P.2d 774 (1968) (citing *Westbrook v. Arizona,* 384 U.S. 150, 16 L. Ed. 2d 429, 86 S. Ct. 1320 (1966) (per curiam) (competency to represent self)).

### B

Courts have taken two basic approaches to the particular question of whether a court may sua sponte impose an NGI plea on an unwilling defendant. *See* Note, *The Right and Responsibility of a Court to Impose the Insanity Defense Over the Defendant's Objection,* 65 Minn. L. Rev. 927, 928–29 (1981) (hereinafter Minn. Note). The first is that taken by the District of Columbia Circuit (hereinafter D.C. Circuit) of the United States Court of Appeals. It recognizes a broad discretion in the trial court to enter an NGI plea sua sponte whenever necessary in the pursuit of justice. *See Whalem v. United States,* 346 F.2d 812, 818–19 (D.C. Cir.), *cert. denied,* 382 U.S. 862 (1965). In exercising its discretion, the court is to weigh various factors, including the defendant's opposition to asserting an insanity defense, the

quality of the defendant's reasoning, the viability of the defense, the court's personal observations of the defendant, and the reasonableness of the defendant's decision. *United States v. Wright,* 627 F.2d 1300, 1311 (D.C. Cir. 1980). The rationale for the rule is that society has "[an] obligation, through the insanity defense, to withhold punishment of someone not blameworthy." *Wright,* at 1310; *Whalem,* at 818. This, the D.C. Circuit has concluded, distinguishes *Alford* and *Faretta. See Wright,* at 1309–10.

In *Frendak v. United States,* 408 A.2d 364 (D.C. 1979) in contrast, the District of Columbia Court of Appeals concluded that *Alford* and *Faretta* required reevaluation of the D.C. Circuit rule. *Frendak,* at 375.

> [T]he underlying philosophy of *Alford* and *Faretta* is inconsistent with *Whalem* as currently interpreted. *Whalem* and succeeding cases have laid substantially more emphasis on the strength of the evidence supporting an insanity defense than on the defendant's choice. In contrast, *Alford* and *Faretta* reason that respect for a defendant's freedom as a person mandates that he or she be permitted to make fundamental decisions about the course of proceedings.

*Frendak,* at 376. Thus, the D.C. Court of Appeals concluded, any competent defendant has the absolute right to refuse an NGI plea, as long as he is competent to make and does make an intelligent and voluntary waiver. *Frendak,* at 378.

The D.C. Circuit rejected the *Frendak* approach in *United States v. Wright, supra,* and questioned whether it would differ significantly in practice. *See Wright,* at 1311–12. Nonetheless, we believe that the approaches differ in two important respects. First, the focus in *Frendak* is solely on *present* mental condition while much, if not most, of the D.C. Circuit's focus is on the defendant's mental condition *at the time of the alleged offense.* Minn. Note, at 936–38. Second, the two approaches differ in the standard by which they assess the defendant's mental condition. Minn. Note, at 938–42. Under *Frendak,* the court focuses on competency to make decisions while, under the D.C. Circuit approach,

the court focuses on legal insanity.

## C

We favor *Frendak* for several reasons. First, we find its reasoning more in accord with *Faretta* and *Alford*. The D.C. Circuit's attempt to distinguish cases involving an insanity defense is unpersuasive. A defendant who is not guilty because of insanity is no more blameless than a defendant who has a valid alibi defense or who acted in legitimate self–defense. Yet courts do not impose these other defenses on unwilling defendants. Singer, at 654.

More generally we concur in the belief that basic respect for a defendant's individual freedom requires us to permit the defendant himself to determine his plea. *See Frendak,* at 376. As noted by the court in *Frendak,* there exist numerous reasons why a defendant might choose to forgo an NGI plea. Absent bifurcation, such a choice may be a wise tactical maneuver where the insanity defense conflicts with some other defense the defendant wishes to interpose. The defendant may find confinement in a mental institution more distasteful than confinement in prison. The stigma of insanity may in some cases be more damaging. Finally, a defendant may have legitimate philosophical reasons for opposing entry of an NGI plea. He may view such a plea as a tacit admission of guilt which he does not wish to make. Alternatively, he may admit the act but maintain its justifiability or intend it to symbolize his strong opposition to some policy of the State. The forced mental commitment of critics in other countries to discredit their dissent is well documented. *See generally* H. Fireside, *Soviet Psycho–Prisons* (1979); A. Podrabnik, *Punitive Medicine* (1979).

The existence in this state of a right to plead guilty provides an independent rationale for adopting the *Frendak* approach. Under *State v. Martin, supra,* a competent defendant has the absolute right to plead guilty if he chooses and if he does so intelligently and voluntarily. In entering such a plea, a defendant necessarily waives both

his right to plead not guilty and his right to plead not guilty by reason of insanity. To hold that a defendant has a right to waive both rights together but not to waive them separately strikes us as wholly absurd.

Recognition of the standard enunciated in *Frendak* is also consistent with most of our other decisions addressing the rights of criminal defendants to determine their own pleas. In *State v. Dodd,* 70 Wn.2d 513, 424 P.2d 302, *cert. denied,* 387 U.S. 948 (1967), wherein we rejected a defendant's claim that the trial court should have forced him to enter an NGI plea, we enunciated a standard virtually identical to that of *Frendak.*

> If a defendant has sufficient intelligence to rationally choose whether to stand trial, plead guilty, or enter a plea of mental irresponsibility, the choice is his—not that of his attorney—for the constitution gives him the right to appear and defend either in person or by counsel. Const. art. 1, § 22.

*Dodd,* at 519. *Accord, State v. Johnston,* 84 Wn.2d 572, 577, 527 P.2d 1310 (1974).

While we did follow the approach of the D.C. Circuit in *State v. Smith,* 88 Wn.2d 639, 564 P.2d 1154 (1977), we no longer find that reasoning persuasive for the reasons already described.[2] *Smith* is inconsistent with the prior analysis of *Dodd* and *Johnston* as well as the subsequent decision in *Martin.* We therefore overrule *Smith* to the extent that it is inconsistent with our decision today.

## II

As with waiver of all rights, waiver of an NGI plea must satisfy certain conditions in order to be constitution-

---

[2]In addition to reiterating the reasoning of the D.C. Circuit in *Whalem,* the court in *Smith* went further to state that "[i]t would clearly be unconstitutional to permit the conviction of a defendant who was legally insane at the time of the commission of the crime." *Smith,* at 643. Yet the authority cited for this proposition, *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910), holds only that a defendant has a constitutional right to claim insanity as a defense, not that he may not waive that right. *See Strasburg,* at 121. We hold today that, in addition to the right to assert an insanity defense, criminal defendants also have a right to waive the defense.

ally valid. In particular, the defendant must be capable of making and must actually make an intelligent and voluntary decision. *Frendak,* at 380. This requires the trial judge to "conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the [insanity] defense, and freely chooses to raise or waive the defense." *Frendak,* at 380; *State v. Khan,* 175 N.J. Super. 72, 82, 417 A.2d 585 (1980). In some instances, the defendant may not be competent to make an intelligent and voluntary decision.

Among the courts adopting the *Frendak* approach, however, there is disagreement about the relationship between competency to waive the insanity defense and competency to stand trial. The split arises not from a difference of opinion regarding the level of competency necessary to waive the insanity defense but rather from differences regarding the level of competency necessary to stand trial. *See State v. Khan, supra* at 82. In *Frendak* itself, the court concluded that a greater degree of competency was necessary to waive the insanity defense because the test for competency to stand trial "is not intended to measure whether the defendant is also capable of making intelligent decisions on important matters relating to the defense." *Frendak,* at 379. In *Khan,* on the other hand, the court concluded that the test for competency to waive the insanity defense and the test for competency to stand trial were identical because in New Jersey the latter does require the ability to help plan the defense. *Khan,* at 82. *See also People v. Redmond,* 16 Cal. App. 3d 931, 938, 94 Cal. Rptr. 543 (1971), *approved in People v. Gauze,* 15 Cal. 3d 709, 717, 542 P.2d 1365, 125 Cal. Rptr. 773 (1975).

*Frendak*'s conclusion, that the competency standards for waiver of the insanity defense and standing trial do differ, rests upon a shaky foundation. It is premised in large part on decisions holding that the level of competency necessary to plead guilty is greater than that necessary to stand trial, because the former requires an "ability to make a reasoned

choice among the alternatives presented". *Sieling v. Eyman,* 478 F.2d 211, 215 (9th Cir. 1973), *cited in Frendak,* at 380. *Sieling* and its progeny have been severely criticized, however, and do not represent the majority view. *See United States ex rel. Heral v. Franzen,* 667 F.2d 633, 637–38 (7th Cir. 1981) and cases cited therein; Note, *Competence To Plead Guilty and To Stand Trial: A New Standard When a Criminal Defendant Waives Counsel,* 68 Va. L. Rev. 1139, 1140, 1148–51 (1982) (hereinafter Va. Note). We believe the better view is that both competency standards should require an ability to make necessary decisions at trial. *See, e.g.,* Note, *Competence To Plead Guilty: A New Standard,* 1974 Duke L.J. 149, 169–70.

In any event, the test for competency to stand trial in Washington does rise to the level of competency to waive the insanity defense. As in New Jersey, a Washington defendant must be capable of "assist[ing] in his own defense". RCW 10.77.010(6), *cited in State v. Wicklund,* 96 Wn.2d 798, 800, 638 P.2d 1241 (1982); *cf. Frendak,* at 379 (quoting *Dusky v. United States,* 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (1960) (per curiam) (defendant need only have ability "to consult with his lawyer with a reasonable degree of rational understanding")). We construe this to include the same ability to understand and choose among alternative defenses which is necessary to intelligently and voluntarily waive the insanity defense. *Accord,* Va. Note, at 1141.

Thus, the only permissible inquiries when a defendant seeks to waive his insanity defense are whether he is competent to stand trial and whether his decision is intelligent and voluntary.[3] If the court finds that the defendant is not

---

[3]We deal here only with waiver by defendants represented by counsel. Where a defendant represents himself, his decisions to waive various rights should be scrutinized more carefully and a higher competency standard applied. Va. Note, at 1151–54; *cf. Westbrook v. Arizona,* 384 U.S. 150, 16 L. Ed. 2d 429, 86 S. Ct. 1320 (1966) (competency necessary to represent self greater than competency necessary to stand trial). This distinguishes our decision in *State v. Kolocotronis,* 73 Wn.2d 92, 436 P.2d 774 (1968) in which, despite the fact that the defendant

competent to stand trial, trial must be stayed or dismissed as required by RCW 10.77.090. If the court finds that the defendant is competent to stand trial but that his decision to forgo an NGI plea is not intelligent and voluntary, it should provide him with whatever additional information or assurances are necessary to enable such a decision. In only the rarest of cases, if ever,[4] will it be impossible to make the decision intelligent and voluntary and hence be necessary to enter an NGI plea sua sponte.

## III

In the present case, the trial court did find Mr. Jones competent to stand trial. Nonetheless, it entered an NGI plea sua sponte solely because it believed Mr. Jones had a viable insanity defense without which he was likely to be convicted. The plea was entered over Mr. Jones' objection and with no inquiry into whether his desire to forgo an NGI plea was intelligent and voluntary. This was error and all aspects of the judgment affected by such error must be vacated.

In these circumstances, this requires that the entire verdict, both the finding that Mr. Jones committed the assault charged and the finding that he was legally insane, must be reversed. While the court in *Frendak* ordered the trial court, if it determined on remand that the defendant had been competent to waive her insanity defense,[5] to

was apparently competent to stand trial, we approved sua sponte entry of an NGI plea because "the defendant lacked mental competency . . . to determine the advisability of submitting the defense of insanity". *Kolocotronis,* at 102.

[4]For example, some courts have held that threats of a private party may render a plea involuntary. *See, e.g., United States v. Colson,* 230 F. Supp. 953, 960–61 (S.D.N.Y. 1964). We need not decide that issue here.

*State v. Khan,* 175 N.J. Super. 72, 417 A.2d 585 (1980) appears to suggest that the defendant's refusal to recognize that he is insane might prevent him from making an intelligent and voluntary decision. *See Khan,* at 83. We see no reason, however, why this would prevent a competent defendant from understanding that, despite his own disbelief, a jury might find him insane.

[5]In *Frendak,* the court remanded to the trial court for an ex post determination of whether the defendant's decision to waive the insanity defense was intelli-

enter a verdict of guilty (*Frendak,* at 381), such a procedure is inappropriate here. In *Frendak,* imposition of the NGI plea did not affect the jury's finding that the defendant had committed the acts charged because the "guilt" and insanity phases of the trial were tried separately. Here, there was no bifurcation.

The State argues that all of the psychiatric evidence introduced to prove Mr. Jones was insane could have been introduced to impeach his testimony even if there had been no insanity raised. Thus, the State argues, trying the insanity and "guilt" issues together caused no prejudice.

We disagree. We perceive several forms of prejudice and cannot conclude they were harmless. The most obvious was that the jury was faced with two defense attorneys arguing conflicting defense theories. While one attorney was arguing that the defendant was acting as "a reasonable and ordinarily cautious and prudent person" (Clerk's Papers, at 22 (self–defense instruction)), the other was arguing that he was acting under the influence of paranoid delusions. Simultaneous presentation of both theories by two counsel both purportedly representing Mr. Jones was highly prejudicial. *See State v. Khan, supra* at 83–84.

In addition, much of the psychiatric evidence introduced at trial would have been inadmissible if there had been no insanity defense raised. While evidence of insanity affecting a witness' perceptions is admissible to impeach the witness' testimony (*see, e.g., State v. Froehlich,* 96 Wn.2d 301, 306, 635 P.2d 127 (1981)), such evidence can also be excluded under ER 403 when its prejudicial effect outweighs its probative value. When the witness in question is the defendant, the potential for prejudice is great because the jury might be influenced by an impermissible desire to remove the insane defendant from society even though he did not commit the particular offense charged. The trial court

gent and voluntary. *See Frendak,* at 381. We believe such a procedure is neither feasible nor necessary here in light of the trial court's express finding that the defendant was competent to stand trial and the other circumstances of this case.

would thus have been acting well within its discretion had it decided to exclude all or part of the psychiatric testimony in the present case. While it is impossible to speculate as to exactly what the court would have done, it did tentatively indicate that if it bifurcated the trial, it would exclude the psychiatric evidence from the "guilt" phase.

In any event, if no insanity defense had been entered, at least some of the psychiatric testimony against the defendant could have been excluded on other grounds. The testimony of the state psychiatrist could possibly have been excluded as violative of Mr. Jones' privilege against self–incrimination and that of the defense psychiatrist could have been excluded as protected by the attorney–client privilege.

The testimony of the state psychiatrist arose out of a court ordered competency examination. Testimony at trial about conclusions and information drawn from such an examination does generally violate the privilege against self–incrimination, absent a knowing and intelligent waiver after warnings as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). *State v. Holland,* 98 Wn.2d 507, 519, 656 P.2d 1056 (1983); *State v. Bonds,* 98 Wn.2d 1, 19–20, 653 P.2d 1024 (1982). The privilege is waived, however, where the defense of insanity is raised (*Bonds,* at 20) and hence imposition of the insanity defense on Mr. Jones prevented him from claiming any violation of the privilege in the present case. While there may have been a proper warning and waiver, Mr. Jones had no reason to explore the issue once the court entered the NGI plea.

Even if the state psychiatrist's testimony could not have been excluded, that of the defense psychiatrist could have. We impliedly recognized in *State v. Bonds, supra,* that communications between a defendant and a defense psychiatrist are protected by the attorney–client privilege (*see Bonds,* at 20–22) and this is in accord with the rule in the vast majority of other jurisdictions. *See, e.g., United States v. Alvarez,* 519 F.2d 1036, 1045–46 (3d Cir. 1975);

*City & Cy. of San Francisco v. Superior Court,* 37 Cal. 2d 227, 237, 231 P.2d 26 (1951); *State v. Toste,* 178 Conn. 626, 628, 424 A.2d 293 (1979) and cases cited therein; *Ballew v. State,* 640 S.W.2d 237, 239–40 (Tex. Crim. App. 1980) and cases cited therein; Annot., *Persons Other Than Client or Attorney Affected by, or Included Within, Attorney–Client Privilege,* 96 A.L.R.2d 125, § 19 (1964) and cases cited therein. This privilege also is waived when the defense of insanity is raised, however. *State v. Bonds, supra* at 22. Thus, entry of the insanity plea prevented Mr. Jones from claiming the privilege by which he otherwise could have completely excluded the testimony of the defense psychiatrist.

At trial, amicus curiae argued that any privilege was waived by disclosure of the defense psychiatrist's report to the prosecutor. While it is true that testimony offered at trial as to part of a communication waives the privilege as to the entire communication (*Martin v. Shaen,* 22 Wn.2d 505, 513, 156 P.2d 681 (1945)), this rule of waiver does not apply to partial disclosure *outside* trial. *Cf. State v. Pam,* 98 Wn.2d 748, 764 n.7, 659 P.2d 454 (1983) (rule that defendant's statement waives privilege against self–incrimination regarding related matters applies only where statement put before trier of fact). This is because the only purpose of such a rule is to prevent clients from advancing to the trier of fact "'a one–sided account of the matters in dispute" and hence using the privilege as a sword rather than a shield. *Pam,* at 764 n.7 (quoting *Brown v. United States,* 356 U.S. 148, 155, 2 L. Ed. 2d 589, 78 S. Ct. 622, 72 A.L.R.2d 818 (1958)).

In light of these evidentiary considerations, it is impossible for us to conclude that Mr. Jones was not prejudiced by the trial court's error. His conviction, as well as his commitment to a mental institution, must therefore be vacated and the case remanded for a new trial.

WILLIAMS, C.J., and STAFFORD, DORE, and PEARSON, JJ., concur.

DIMMICK, J. (dissenting)—I respectfully dissent. The trial court relied on a recent, unanimous decision of this court (*State v. Smith,* 88 Wn.2d 639, 564 P.2d 1154 (1977)) in entering sua sponte the plea of not guilty by reason of insanity. The majority now overrules *Smith* and disavows the majority of cases which have addressed the issue before us. I do not agree with this wholesale rejection of an established, useful body of law.

The leading case affording a trial court the discretion to enter a plea of not guilty by reason of insanity over the objection of the defendant is *Whalem v. United States,* 346 F.2d 812, 818–19 (D.C. Cir.), *cert. denied,* 382 U.S. 862 (1965). That court explained the reason for its holding as:

> One of the major foundations for the structure of the criminal law is the concept of responsibility, and the law is clear that one whose acts would otherwise be criminal has committed no crime at all if because of incapacity due to age or mental condition he is not responsible for those acts. If he does not know what he is doing or cannot control his conduct or his acts are the product of a mental disease or defect, he is morally blameless and not criminally responsible. The judgment of society and the law in this respect is tested in any given case by an inquiry into the sanity of the accused. In other words, the legal definition of insanity in a criminal case is a codification of the moral judgment of society as respects a man's criminal responsibility; and if a man is insane in the eyes of the law, he is blameless in the eyes of society and is not subject to punishment in the criminal courts.
>
> In the courtroom confrontations between the individual and society the trial judge must uphold this structural foundation by refusing to allow the conviction of an obviously mentally irresponsible defendant, and when there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case. Just as the judge must insist that the *corpus delicti* be proved before a defendant who has confessed may be convicted, so too must the judge forestall the conviction of one who in the eyes of the law is not mentally responsible for his otherwise criminal acts. We believe then that, in the pursuit of justice, a trial judge must have the discretion to impose an

unwanted defense on a defendant and the consequent additional burden of proof on the Government prosecutor.

(Footnote omitted.)

Although only a few courts in other jurisdictions have considered the issue of a trial judge imposing a not guilty by reason of insanity plea, most have allowed the trial court this discretion. *See State v. Fernald,* 248 A.2d 754 (Me. 1968) (trial court did not abuse its discretion in refusing to permit defendant to withdraw plea of not guilty by reason of insanity); *Walker v. State,* 21 Md. App. 666, 321 A.2d 170 (1974) (where court has before it competent, uncontradicted evidence that the accused was insane at the time of the crime, it would be manifest injustice to permit withdrawal of insanity plea); *State v. Pautz,* 299 Minn. 113, 217 N.W.2d 190 (1974) (to promote just determination of law, trial judge has authority to raise an insanity defense defendant had not affirmatively pursued). We unequivocally followed this trend in *Smith* in stating "the judge had inherent power to impose the insanity defense sua sponte over objection of defendant and his counsel." *Smith,* at 642–43.

The majority disapproves of *Whalem* and substitutes another formula therefor because it believes two United States Supreme Court decisions require such a result. Those cases are: *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970) and *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). These two cases were decided prior to our decision allowing the judge to enter the plea in *Smith* and are irrelevant. Recently, another court in *United States v. Wright,* 627 F.2d 1300, 1309–10 (D.C. Cir. 1980) fully explained its reasons for rejecting the very argument made by the majority. I agree with that court's analysis:

> The government urges this court to reshape the *Whalem* rule in light of *North Carolina v. Alford* and *California v. Faretta.* Neither case involved an insanity issue, and for that reason alone their relevance is *de minimus.*

When a criminal defendant's sanity is subject to question, doubt is cast not only on his competence to stand trial but also on the very capacity of our legal system to assign blame. The issue becomes whether there is sufficient question to require jury consideration of the defendant's ability to understand the law and conform his conduct to it—that is, whether he can be considered an autonomous, choice–making actor deserving blame for alleged wrongdoing. Protection granted a competent individual's choice has no bearing on this issue, which basically challenges the justification for punishment.

In this light, because *Alford* and *Faretta* protect rights of competent defendants, their holdings have little application to *society's* obligation, through the insanity defense, to withhold punishment of someone not blameworthy. A plainly nonfrivolous challenge to a defendant's mental responsibility requires inquiry because it suggests that the free will presupposed by our criminal justice system cannot be presumed. Thus, *Alford's* protection of a defendant's right to plead guilty, even while maintaining his own innocence, cannot similarly reserve the insanity plea decision to the defendant. Moreover, *Alford* itself is limited to permitting the self–claimed innocent's ability to *enter* a guilty plea. Certainly, this provides no authority for entrusting the entire decision on the insanity defense to the defendant.

Similarly, *Faretta's* explication of the "right to self–representation" has no bearing on the insanity issue. No defendant, whether acting *pro se* or through counsel, can restrain the court from considering whether the insanity defense should be raised. Even the right to self–representation at trial does not grant license to reshape the very foundations of our criminal law.

(Footnotes omitted.)

I find no compelling reason to change our established rule affording a trial court discretion to raise sua sponte the not guilty by reason of insanity plea. As stated by Judge Gallagher in his concurrence in the result in *Frendak v. United States,* 408 A.2d 364 (D.C. 1979), *Whalem* "seems entirely reasonable, and is there for guidance." *Frendak,* at 384. *Whalem* and other cases following and expanding *Whalem* are not, contrary to the implications of the major-

ity, insensitive to the wishes of the defendant. For example, the opinion in *United States v. Robertson,* 430 F. Supp. 444 (D.D.C. 1977) fashioned sensible, workable criteria which indicate sensitivity toward a defendant. Those factors are:

> [T]he quality of the evidence supporting the insanity defense; the defendant's wish in the matter; the quality of defendant's decision not to raise the defense; the reasonableness of defendant's motives in opposing presentation of the defense; and the Court's personal observations of the defendant throughout the course of the proceedings against him.

*Robertson,* at 446.

I believe that *Whalem, Smith,* and other cases permitting a trial court to impose the insanity defense over a defendant's objection better reflect the jurisprudential concerns underlying the insanity defense. I would hold the trial court did not abuse its discretion in this case.

Petitioner further challenges the trial court's refusal to bifurcate the trial into a "guilt" phase and an "insanity" phase. The majority finds prejudice in this refusal. The trial court studiously allowed the prosecution to present the evidence of insanity only after the defense had presented its case of self–defense. I find the trial court acted properly. To hold otherwise would result in an incredible situation. Petitioner was diagnosed as a chronic paranoid schizophrenic, an illness which may cause delusions of a persecutory nature so that a person may perceive as reality threats or dangers which are in actuality imaginary. Persons suffering from this illness may physically assault their fancied persecutor. M. Sim, *Guide to Psychiatry* 471–72 (1963). To prevail on his claim of self–defense, petitioner had to convince the jury that his apprehension of danger was reasonable and use of force necessary. RCW 9A.16.020; *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977). The jury could not rationally assess the reasonableness of Jones' state of mind without being apprised of his mental illness and his possible paranoid delusions. The jury is entitled to have such

information in making its determination. *Cf. United States v. Lindstrom,* 32 Crim. L. Rep. (BNA) 2485 (11th Cir. Feb. 22, 1983). (Court held that testimony regarding the mental illness of a prosecutor's witness should have been allowed on cross examination. The jury should, within reason, be informed of all matters affecting a witness' credibility to aid in its determination of the truth.) The claim of self–defense and petitioner's mental illness are inseparable in this case. Thus, the trial court's refusal to grant a bifurcated trial was not error.

ROSELLINI, BRACHTENBACH, and DOLLIVER, JJ., concur with DIMMICK, J.