# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                      Respondent,<br><br>     v.<br><br>TIMOTHY ROHN,<br><br>                      Appellant. | No.  45654-1-II<br>(Consolidated with No. 47394-1-II)<br><br><br>UNPUBLISHED OPINION |

BJORGEN, A.C.J. — Timothy Rohn appeals his convictions and sentence for first degree arson, two counts of first degree malicious mischief, felony harassment, intimidating a public servant, and third degree theft.  In two consolidated appeals, he argues that the trial court violated his right to represent himself when it denied his motion to proceed pro se, violated his right to due process by failing to instruct the jury on an insanity defense, and sentenced him to a variable community custody term without statutory authorization.

We hold that Rohn is precluded from challenging the trial court's denial of his motion to represent himself and that the trial court did not err by declining to provide an insanity

instruction to the jury. We also hold against the claims raised in Rohn's statement of additional grounds (SAG). However, we agree that the trial court erred by imposing a variable term of community custody as part of Rohn's sentence. Accordingly, we affirm Rohn's convictions but remand to the trial court for limited resentencing to correct the community custody provision.

## FACTS

In 2005, Rohn was committed to Western State Hospital (Western State) after he was charged with second degree arson, but found not guilty by reason of insanity. CP at 226-27. While committed, Western State classified him as a "[h]igh [v]iolent [o]ffender." Clerk's Papers (CP) at 3. In July 2013, he was arrested for apparently setting fire to a mattress in his room, entering an unauthorized area of the hospital, barricading himself in a closet in that area, and making threats to responding police. The State ultimately charged him with first degree arson, two counts of first degree malicious mischief, felony harassment, intimidating a public servant, and third degree theft.

Because of Rohn's mental illness history, the trial court ordered a competency evaluation. The evaluator deemed Rohn able to understand the charges and proceedings against him and to assist his counsel in preparing his defense. The trial court held a hearing on competency and issued an order declaring Rohn competent to stand trial.

1. Rohn's Motion to Represent Himself

At a pretrial hearing on a motion to continue the trial date, Rohn expressed his desire to waive his right to counsel and represent himself. Rohn stated that he would not receive a fair trial and therefore simply wished to proceed as quickly as possible without counsel. Rohn

2

further stated that he did not need to prepare for trial, telling the judge "I will win the case with my closing argument . . . [and] any reasonable jury will find me not guilty of the charges." Report of Proceedings (RP) (Sept. 9, 2013) at 7. The trial court set a hearing date to consider Rohn's request.

At the hearing, the trial court informed Rohn of the potential sentence he faced for the crimes the State intended to try, and inquired into Rohn's understanding of the trial process. Rohn admitted that he had never studied law or represented himself in a criminal matter and was unfamiliar with the applicable evidentiary and procedural rules. Rohn reiterated his intention to focus solely on closing argument and to forego questioning the State's witnesses or offering evidence to support his defense. The trial court denied Rohn's motion to represent himself on grounds that Rohn was not competent to knowingly and intelligently waive his right to counsel at that time. Rohn was then represented throughout pretrial proceedings.

At the State's request, the trial court revisited the issue on the eve of trial. At that time, Rohn clearly and unequivocally stated that he wanted to proceed to trial with representation and no longer wanted to represent himself. Rohn was then represented throughout the trial process.

2. Rohn's Waiver of an Insanity Defense

At another pretrial hearing on a motion to continue, Rohn indicated that he wished to present an insanity defense to the charges against him. His attorney was caught off guard by this, and the trial court granted a continuance, commenting that Rohn and his attorney were "investigat[ing]" an insanity defense. RP (Oct. 2, 2013) at 11.

3

Rohn's attorney moved before trial to reevaluate Rohn's competence to stand trial, and the trial court engaged in a colloquy with Rohn about his sanity. He told the court that he was largely uncooperative with his evaluators because he did not want to be found incompetent and sent back to Western State. He described himself as a highly intelligent malingerer who was finally ready to take responsibility for his actions and face criminal punishment. He indicated extreme dissatisfaction with his treatment at Western State, and stated that he preferred prison to commitment.

At a later hearing on a pretrial motion to exclude evidence of Rohn's mental health, Rohn's attorney indicated that Rohn "has changed his mind about [presenting an insanity defense]." RP (Nov. 13, 2013) at 40. At trial, Rohn's defense was a general denial. No party requested a jury instruction on an insanity defense, and the trial court issued no such instruction to the jury.

Rohn pled not guilty to all charges against him. Following trial, the jury found him guilty on all counts.

3.      Rohn's Sentence

Rohn was sentenced to a standard range 61-month period of confinement. His sentence included a community custody condition to be served upon his release: the longer of 18 months or the period of early release time earned.

Rohn appeals his convictions and his sentence.

4

ANALYSIS

I. DENIAL OF MOTION TO PROCEED PRO SE

Rohn claims that the trial court violated his constitutional right to represent himself when it denied his motion to proceed pro se. We hold that even if the trial court erred in initially denying the motion, Rohn is precluded by the invited error doctrine from raising this challenge before us.

A criminal defendant has a constitutional right to waive representation and represent himself, a right rooted in individual dignity and autonomy. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 659-60, 260 P.3d 874 (2011), *cert. denied*, 135 S. Ct. 109 (2014). In *State v. Breedlove*, we said that denial of this right was not subject to a harmless error analysis:

> We cannot meaningfully hold that the denial of the right of self-representation is harmless error; most defendants are probably better represented by counsel than themselves. Denial of this constitutional right is prejudicial in itself, regardless of the consequences of self-representation.

79 Wn. App. 101, 110, 900 P.2d 586 (1995); *accord McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis."); *State v. Estabrook*, 68 Wn. App. 309, 317, 842 P.2d 1001 (1993) ("Unjustified denial of the right [to self-representation] requires reversal; no showing of prejudice is required.").

Rohn, however, unequivocally withdrew his request to proceed without representation on November 13, just before the start of trial. In a colloquy directly with the defendant, the court stated:

5

> When we talk about the record, we talk about in the event there were to be a conviction here and this is reviewed by an appellate court, I want the record to be as clear as it can be.
>
> . . . .
>
> Do you want to go to trial with [defense counsel], or do you want to go to trial representing yourself?

RP (Nov. 13, 2013) at 63. Rohn responded simply, "I want to go to trial with [defense counsel]."

RP (Nov. 13, 2013) at 63.

A more direct and unambiguous withdrawal of Rohn's request to represent himself is hard to imagine. Rohn makes no argument that this statement was less than knowing and voluntary. Consequently, we read Rohn's statement at face value as a withdrawal or abandonment of his prior request to represent himself.

We recognize that Rohn expressed some dissatisfaction with his counsel during the November 13 colloquy with the trial court, stating that he believes his counsel will not "put her best effort forward" in his case. *Id*. at 62. We also recognize that with this exchange occurring just before trial, Rohn may have felt constrained to accept representation. On the other hand, the court revisited the pro se issue on November 13 at the request of the State, not Rohn. When given the clear opportunity, Rohn did not renew his request to proceed pro se but, after expressing his dissatisfaction with his counsel, explicitly stated that he wished to proceed with her representation. Rohn does not argue here that he felt coerced by scheduling or any other circumstances to make this statement.

Even if we did not believe that Rohn abandoned his motion to proceed pro se, he invited any error in the trial court's ruling by stating that he wanted to proceed with counsel. Under the invited error doctrine, a party who induces the trial court to err is precluded from claiming on

appeal that the error warrants reversal. *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990); *State v. Jones*, 144 Wn. App. 284, 298-99, 183 P.3d 307 (2008). Rohn cannot challenge the denial of pro se representation after he freely and unconditionally withdrew that request and expressed an unequivocal desire to proceed *with* representation. To license such a challenge would allow a litigant to attack a decision which the litigant asked the court to make, contrary to the invited error doctrine. *See Jones*, 144 Wn. App. at 298-99. Rohn is precluded from challenging the trial court's denial of his motion to proceed pro se.

## II. FAILURE TO INSTRUCT ON INSANITY DEFENSE

Rohn claims that the trial court violated his constitutional right to due process by allowing him to forego an insanity defense despite finding him incompetent to knowingly and intelligently waive his right to counsel. We disagree.

In general, we review for an abuse of discretion a trial court's determination that a defendant is competent to waive his rights. *See State v. Coley*, 180 Wn.2d 543, 551, 326 P.3d 702 (2014), *cert. denied*, 135 S. Ct. 1444 (2015). This appears to be the applicable standard when assessing a trial court's decision to allow waiver of an insanity plea. *See State v. Jones*, 99 Wn.2d 735, 741, 664 P.2d 1216 (1983). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id*.

A defendant has a right to plead not guilty by reason of insanity. *Jones*, 99 Wn.2d at 741. A defendant may waive his right to such a plea, as long as he does so knowingly and

intelligently.[1] *Id.* at 742-44. When a defendant represented by counsel chooses to forego a not guilty by reason of insanity plea, the trial court must allow the waiver if the defendant (1) is competent to stand trial and (2) has knowingly and intelligently waived the plea.[2] *Id*. at 746-47. If the defendant is competent to stand trial but the trial court believes the defendant's waiver is not knowing and intelligent, the trial court is to provide the defendant with the information necessary to proceed knowingly and intelligently. *Id*. at 747. "In only the rarest of cases, if ever, will it be impossible to make the decision intelligent and voluntary and hence be necessary to enter [a not guilty by reason of insanity] plea sua sponte." *Id*.; *accord State v. Coristine*, 177 Wn.2d 370, 377, 300 P.3d 400 (2013) (citing *Jones* for the proposition that "the court must honor the intelligent and voluntary choice of a competent defendant to forgo an insanity defense.").

Rohn initially expressed an interest in presenting an insanity defense, and the trial court noted that he was "investigat[ing]" the defense with his attorney. RP (Oct. 2, 2013) at 10-11. Rohn, however, never formally pleaded not guilty by reason of insanity. Instead, he made it abundantly clear during later pretrial proceedings that he did not want to plead insanity because he wanted to avoid the prospect of being returned to Western State. RP (Nov. 6, 2013) at 21 ("I

---

[1] Rohn argues that because he was previously acquitted by reason of insanity and had been continuously committed to Western State since that time, the trial court should have considered him presumptively mentally ill. The issue, however, is not whether Rohn was mentally ill, but whether he was competent to knowingly and intelligently waive his right to present an insanity defense.

[2] When a defendant is not represented by counsel, the situation is different. The trial court is to engage in a more searching inquiry, because in general "[a pro se defendant's] decisions to waive various rights should be scrutinized more carefully and a higher competency standard applied." *Jones*, 99 Wn.2d at 746 n.3, 748.

did not want to be found insane because I am not. I feel that I deserve to go to prison. I feel that I don't belong in Western State Hospital because I don't deserve to be there."); RP (Nov. 13, 2013) at 63 ("I am prepared to go to prison to get away from Western State Hospital."). The trial court allowed Rohn to decline to present an insanity defense to the jury, thereby allowing him to avoid returning to Western State. To instruct the jury on an insanity defense over Rohn's objection would have nullified his strategic choices entirely and done great damage to his right to present the defense of his choosing. Without some indication that Rohn was incompetent to make such choices, the trial court was obligated to honor them.

Under the circumstances, the trial court reasonably determined that Rohn was competent to waive the insanity defense. The trial court ruled that Rohn was competent to stand trial, and reaffirmed this ruling after Rohn's attorney requested that the court revisit the issue. Rohn clearly understood the consequences of his decision and made that decision knowingly, as his stated goal in waiving the defense was to avoid being committed to Western State, even if that meant prison time. While the trial court's ruling on Rohn's competence to waive counsel was apparently prompted by Rohn's poor understanding of the trial process, the trial court had no reason to believe that Rohn did not understand the operation and consequences of an insanity defense and waiver thereof. Indeed, Rohn made it clear that he specifically wanted to avoid the effects of such a defense. This was not among "the rarest of cases" in which a sua sponte insanity plea is warranted, and the trial court appropriately decided not to "impinge[] on the independent autonomy the accused must have to defend against charges." *Coristine*, 177 Wn.2d at 377.

9

That Rohn may now regret his choices before the trial court does not change the situation facing that court when it instructed the jury. The trial court did not abuse its discretion by declining to instruct the jury on an insanity defense.

III. COMMUNITY CUSTODY TERM

Rohn argues that the trial court exceeded its statutory authority by imposing a variable term of community custody contingent on the amount of early release time earned. The State concedes error. We accept the State's concession and remand for resentencing.

We review de novo whether a court had the statutory authority to impose a community custody sentencing condition. *See State v. Roberts*, 185 Wn. App. 94, 96, 339 P.3d 995 (2014). The governing statute provides in relevant part that

> (2) A court shall, in addition to the other terms of the sentence, sentence an offender to community custody for eighteen months when the court sentences the person to the custody of the department for a violent offense that is not considered a serious violent offense.
>
> (3) A court shall, in addition to the other terms of the sentence, sentence an offender to community custody for one year when the court sentences the person to the custody of the department for
>
> (a) Any crime against persons under RCW 9.94A.411(2).

RCW 9.94A.701.[3] Under this statute, a sentencing court may not impose a variable sentence contingent on the amount of early release time earned. *State v. Franklin*, 172 Wn.2d 831, 836,

---

[3] These subsections apply because Rohn was convicted of first degree arson, which is a violent offense but not a "serious violent offense" under our criminal code, RCW 9.94A.030(46), (55); RCW 9A.48.020(2); and is also a crime against persons under RCW 9.94A.411(2). RCW 9.94A.030 was amended in 2015. This amendment does not affect the issues in this matter. LAWS OF 2015, ch. 287 § 1; LAWS OF 2015, ch. 261 § 12.

263 P.3d 585 (2011). If a court imposes such a sentence, the proper remedy is remand for resentencing. *State v. Winborne*, 167 Wn. App. 320, 330, 273 P.3d 454 (2012).

Here, the trial court imposed the following condition as part of Rohn's sentence:

> (A)     The defendant shall be on community custody for *the longer of*:
> (1) the period of early release. RCW 9.94A 728(1)(2), or
> (2) Count I 12 months for Violent Offenses.

CP at 204-05 (original condition) (emphasis added); *see also* CP 259-60 (correcting the condition to reflect an 18-month maximum). This clearly imposes a variable term of post-release community custody dependent on the amount of early release time earned. This is contrary to the authority granted by RCW 9.94A.701, and the trial court erred by imposing an unauthorized sentence. Accordingly, we remand for limited resentencing to correct this error.

## IV. SAG CLAIMS

Rohn has also filed a SAG with three additional claims, asserting that the trial court erred by (1) permitting the prosecutor to remove admitted evidence from the courtroom, (2) declining to rule on Rohn's motion to dismiss for violation of his right to a speedy trial, and (3) ruling that the State could present and draw the jury's attention to evidence that Rohn was a violent offender. Rohn has failed to sufficiently raise his first claim, and we hold against his other two claims.

1.     Removal of Evidence from Courtroom

Rohn claims that the trial court erred by permitting the State to remove admitted video evidence from the courtroom in order to show the video to authentication witnesses outside the view and hearing of the jury. However, he does not identify the nature of the error or any harm

that may have resulted. While a defendant need not provide developed legal argument or citations to authority in a SAG, he must "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Rohn clearly identifies the action he believes erroneous, but does not identify the nature of the error. Therefore, he has not properly raised this issue.

Rohn also failed to object at trial to the action he now challenges and therefore failed to properly preserve the issue.. We generally will not review issues raised for the first time on appeal. RAP 2.5(a); *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). Because Rohn did not object to the trial court's ruling allowing the State to remove the video from the courtroom, we decline to review this issue on appeal.

2.     Speedy Trial Right Violation

Rohn claims that the trial court erred by failing to rule on his motion to dismiss the charges for violation of his right to a speedy trial. However, the trial court at least implicitly ruled on Rohn's motion, denying it on grounds that the trial date had been properly continued by court order. We hold that the trial court did not err in denying that motion.

CrR 3.3 requires that a criminal defendant who, like Rohn, is detained pending trial be tried within 60 days of his arraignment, absent certain circumstances that restart the 60-day period, none of which are relevant to this case. CrR 3.3(c)(1). This 60-day period is tolled, among other reasons, for competency proceedings, CrR 3.3(e)(1), and continuances granted by the trial court, CrR 3.3(e)(3). A trial court may grant a continuance by written agreement of the parties or where "required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2).

12

Rohn was initially set to be arraigned on July 3, 2013, but the trial court deferred arraignment pending evaluation of Rohn's competency to stand trial. Rohn was deemed competent and arraigned on August 15, and trial was set for September 12. On September 9, the trial court continued the trial date to October 23 over Rohn's objection, because his counsel had not had adequate time to prepare for trial. On October 2, the trial court again continued the trial date, this time to November 6 to give his counsel time to explore an insanity defense. Rohn did not object to the October 2 continuance. On November 13, through his attorney, Rohn moved to dismiss the charges against him for violation of his speedy trial right.

The trial court did not violate Rohn's statutory right to a timely trial. Rohn was arraigned on August 15, beginning the 60-day period under CrR 3.3. This period was tolled from September 9 to November 6 due to the continuances. These continuances were granted in Rohn's own interest, to give his counsel time to prepare for trial and explore all applicable defenses. Thus, consistently with CrR 3.3(f), these continuances were required in the administration of justice, did not prejudice the defendant, and tolled the 60-day period. Trial began on November 6.[4] Therefore, only 25 of the 60 allowed days elapsed.

---

[4] Trial began on November 6, but the trial court recessed trial until November 13 after some preliminary proceedings.

13

3.      ER 403 Violation

Rohn argues that the trial court erred by ruling that the State could present evidence that

he was classified as a violent offender at Western State.  We treat this as a contention that under

ER 403 the potential for undue prejudice resulting from such evidence substantially outweighed

its probative value.  We disagree with Rohn's argument.

Performing the balancing analysis required by ER 403 is a matter of the trial court's

discretion, and we will only disturb the resulting ruling where the trial court has manifestly

abused its discretion.  *Carson v. Fine*, 123 Wn.2d 206, 226, 867 P.2d 610 (1994).

In ruling that Rohn's status could be discussed at trial, the trial court outlined its

reasoning:

> [T]he risk of unfair prejudice is that the jury would use it for an improper purpose,
> that they might be emotionally driven by it.  I think the risk of that is low under the
> circumstances.  And to be excluded under Evidence Rule 403, the risk of unfair
> prejudice has to substantially outweigh the probative value.  And I cannot make
> that finding. I don't believe that any risk would substantially outweigh.
>
> The jury's already going to know that Mr. Rohn is committed to Western
> State Hospital.  I don't know that this classification as to his potential violence is
> adding much to that.

RP (Nov. 14, 2013) at 23-24.  The trial court also limited the State's use of Rohn's classification,

requiring the State and its witnesses to refer to it generally as a "violent offender" classification

rather than using the actual term Western State used: "high violent offender."  RP (Nov. 14,

2013) at 27-28; RP (Nov. 19, 2013) at 172.

While there was some risk that jurors might be affected by knowledge that Rohn was

considered violent, that risk was clearly outweighed by the probative value of the information to

14

the jury. The State had the burden of proving as an element of felony harassment that the officers reasonably believed that Rohn's threats to the responding police officers were credible. The officers' knowledge that Rohn was classified as a violent offender was highly probative of this element, since awareness of a person's history of violence makes it more reasonable to believe that the person is willing to carry out a violent threat. Under the circumstances, the probative value of the officers' knowledge of Rohn's classification outweighed the risk of undue prejudice from mentioning that classification at trial. In addition, the court appropriately limited the use of Western State's actual classifying term "high violent offender" because the language of that term raised the risk of undue prejudice and the jury was unaware of the actual criteria for the classification. RP (Nov. 13, 2014) at 27-28. Because the trial court's decision was reasonable and appropriately tailored to the circumstances, it did not abuse its discretion.

CONCLUSION

We affirm Rohn's convictions. We hold that Rohn is precluded from challenging the denial of his motion to proceed without representation and that the trial court did not err in declining to instruct the jury sua sponte on an insanity defense. We also hold that the SAG claims he did not waive fail on their merits.

However, we vacate Rohn's community custody sentence and remand for limited resentencing, because the sentencing court imposed an unauthorized variable community custody term as part of Rohn's sentence. At resentencing, the sentencing court should impose a fixed

15

No. 45654-1-II
(Cons. w/No. 47394-1-II)

community custody term, as authorized by statute.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

MAXA, J.

LEE, J.

16