## STATE v. ROBERT PAUTZ.

217 N. W. 2d 190.

April 5, 1974—No. 43989.

114

C. *Paul Jones,* State Public Defender, and *William J. Mauzy,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Jonathan H. Morgan,* Solicitor General, and *Robert F. Carolan,* Special Assistant Attorney General, for respondent.

TODD, JUSTICE.

Defendant, charged with aggravated assault, Minn. St. 609.225, subd. 2, waived his right to a jury trial and submitted the issue of his guilt or innocence to the trial court. At the close of the case, the trial court on its own motion found defendant not guilty by reason of the fact that he was mentally ill and further found that he manifested homicidal tendencies. Defendant was committed under the automatic commitment statute. Minn. St. 631.19. We reverse.

Defendant was charged with committing an act of aggravated assault upon his wife on January 30, 1972. Defendant and his wife were married on January 12, 1963. They had four children. The marriage had been fairly stable in its early years, but during the latter few years had been marked by considerable discord, caused mainly by defendant's problems. He had a history of alcoholism and had been committed by his wife in 1968 for a period of 4 to 6 weeks for treatment of a manic-depressive condition. Again in 1969, he was committed to Glenwood Hills for treatment of the same condition. In 1971, he committed himself as an alcoholic. In October 1971, he returned to the family home. At the time of the alleged assault, he was unemployed, his primary duties being to care for the children and the house while his wife worked.

In the days immediately prior to the alleged assault, a series of events had led to a serious dispute between defendant and his wife, after which defendant left the family home on Friday, January 28, 1972, and spent the evening at a motel. The defendant testified that during that night he had decided to advise his

wife to seek a divorce. About 4 p.m. Saturday, January 29, defendant returned home. His wife testified that he was in a depressed condition, crying and begging her to listen to him. He told her that she wouldn't like what he was going to say. The parties decided to discuss the matter after the children went to bed. About 10 p.m. that evening, after the children were in bed, Mrs. Pautz bathed. Defendant testified that when he saw her in her nightgown and robe he decided to postpone the discussion and seek to have sexual relations with her. His wife inquired as to what he wished to discuss and on receiving no answer went downstairs. Shortly thereafter, defendant came downstairs without any clothing. His wife testified that this was out of character for him. She further testified that she was unaware that he desired sexual relations, but that she returned upstairs. Defendant followed her and made advances which she rejected. She told him that she was going downstairs to sleep on the couch. Defendant followed her downstairs and attempted to get on top of her on the couch.

The testimony of defendant and his wife varies sharply at this point as to the events which followed. The wife testified that he repeated his statement, "You are not going to like what I've got in mind," and hit her in the stomach. He picked her up, threw her on the floor, and hit her again with sufficient force to knock the wind out of her. He told her he was going to kill her and that he would "rip her wide open," and then started kicking her in the back, chest, and stomach.

Defendant testified that when he approached his wife on the couch he found her refusal exciting. He continued his advances, pulling her onto the floor, but she resisted, kicking at him, and screaming. He testified that he slapped her to quiet her but denied using his feet or fist. He admitted that he stated that he was going to "rip her wide open" but meant it to be a provacative statement and not a threat.

By this time, the screaming of the wife had awakened the children, and they were standing on the stairway crying. Defendant

told the children to go back to bed. He went upstairs, dressed, and calmed the children. His wife ran out of the house to the neighbors and awoke them. Mr. Everson, the neighbor, went to defendant's door. He asked admittance but was told that Mrs. Pautz could come home. The police arrived and observed defendant sitting inside, fully clothed, holding a carving knife. Defendant testified that he could not recall the reason for the knife but that he had probably had something to eat and the knife he had was for carving meat. When the door was forced open, defendant immediately dropped the knife and peaceably submitted to arrest.

Mrs. Pautz went to the emergency room at the hospital the next day. She suffered a black eye and multiple bruises on her arms, chest, and back, but tests revealed no internal injuries. Bed rest and aspirin were prescribed, and she was off work for 2 weeks.

At the close of the evidence, the court discussed with the prosecuting and defense attorneys the possible verdicts. At this time the court on its own motion, and for the first time, raised the possibility of a verdict of not guilty by reason of having been mentally ill. Counsel for defendant indicated in discussions with the court that there might be some evidence to that effect but left the matter to the discretion of the court. The court found defendant not guilty by reason of the fact that on the date of the offense alleged defendant was mentally ill and further found that defendant, while committing the assault upon his spouse, manifested homicidal tendencies.[1]

---

[1] Minn. St. 631.19 provides in pertinent part: "When, during the trial of any person on an indictment or information, such person shall be found to have been, at the date of the offense alleged in the indictment mentally ill or mentally deficient and is acquitted on that ground, the jury or the court, as the case may be, shall so state in the verdict, or upon the minutes. If such person is found to have been mentally ill, the court shall thereupon, forthwith, commit such person to the proper state hospital for safekeeping and treatment; and when, in the opinion of such jury or court, such person, at such date, had homicidal tenden-

Defendant was committed to the Minnesota Security Hospital at St. Peter on May 9, 1972, pursuant to judgment. An appeal to this court was filed. On November 30, 1972, defendant was released on parole from the hospital, conditioned on his receiving further treatment as an alcoholic.

Defendant claims that his commitment to a mental institution after the court found him not guilty by reason of mental illness deprived him of his liberty without due process because the record is barren of any evidence to support such a finding; that the statute providing for mandatory commitment following an acquittal by reason of mental illness cannot be applied to him since he did not affirmatively rely on the insanity defense; and that the mandatory commitment statute violates due process and equal protection.

■ Defendant challenges the right of the trial judge to raise on his own initiative a defense defendant had not affirmatively pursued. The trial judge has a function and a role in the fair administration of justice in our criminal law system. The trial judge in this case most admirably sought to fulfill his duties and obligations in this system. He raised a matter which could significantly promote a just determination of the trial.[2] We affirm the actions of the trial judge in raising this issue.

■ However, the findings of the trial court on this issue must meet the evidentiary standards applicable to jury verdicts. Any defense raised by the court on its own initiative must meet the same evidentiary requirements as if the defense had been raised by the defendant. There must be probative evidence to sustain

cies, the same shall also be stated in the verdict or upon the minutes, and the court shall thereupon, forthwith, commit such person to the Minnesota security hospital for safekeeping and treatment; and in either case such person shall be received and cared for at such hospital to which he is thus committed."

[2] A.B.A. Standards for Criminal Justice, The Function of the Trial Judge, § 1.1(a) (Approved Draft, 1972); Whalem v. United States, 120 App. D. C. 331, 346 F. 2d 812, 818, certiorari denied, 382 U. S. 862, 86 S. Ct. 124, 15 L. ed. 2d 100 (1965).

the findings of mental illness and homicidal tendencies or the judgment requiring commitment based thereon must fall as a violation of due process. Thompson v. City of Louisville, 362 U. S. 199, 80 S. Ct. 624, 4 L. ed. 2d 654 (1960).

Minn. St. 611.025 sets forth the presumption in all criminal proceedings that a defendant is responsible for his acts.[3] The standard for acquittal by reason of mental illness is set out in Minn. St. 611.026:

"No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong."

We have held that when the defendant raises mental illness as a defense the burden is on him to establish the defense by a fair preponderance of the evidence. State v. Hoskins, 292 Minn. 111, 193 N. W. 2d 802 (1972); State v. Finn, 257 Minn. 138, 100 N. W. 2d 508 (1960). We have further held that expert testimony is neither necessary nor binding in such a determination. State v. Hoskins, *supra*. The question of insanity is properly one for the trier of fact. State v. Hoskins, *supra*. The factfinder may consider any competent evidence that relates to cognition, volition, and capacity to control behavior. State v. Rawland, 294 Minn. 17, 199 N. W. 2d 774 (1972).

■ Having raised the defense of mental illness, the trial court was obliged to make its determination upon the evidence presented to it and under the standards applicable to this defense under the laws of the State of Minnesota. As stated, defendant

---

[3] Minn. St. 611.025 provides: "Except as otherwise provided by law, in every criminal proceeding, a person is presumed to be responsible for his acts and the burden of rebutting such presumption is upon him."

did not affirmatively seek to raise this defense and the record is barren of any evidence presented by him to support it. Rather, his entire defense consisted of a denial of an aggravated assault upon his wife, a denial of any threats to kill her, and the testimony of character witnesses. Nothing in the evidence presented by defendant would sustain a finding of mental illness at the time of the commission of the alleged assault.

The prosecution's evidence other than the testimony of the wife was not directed to defendant's mental condition at the time of the alleged assault. The testimony of Mrs. Pautz clearly established that she was frightened and that she thought defendant was not acting normally. On cross-examination, she was asked the question, "Do you think he was acting rationally?" to which she answered, "I think he knew what he was doing at the moment." Clearly, such a statement by the principal witness for the prosecution is evidence that defendant's mental state was the opposite of that required by Minn. St. 611.026, which permits the defense of mental illness only to one who does not know the nature of his act. Further, since this testimony must be evaluated in the light of the burden of proof to establish mental illness as a defense, it would diminish, if not destroy, that defense.

We have carefully reviewed the entire record and find no evidence which would justify the return of a verdict of not guilty by reason of mental illness. Having disposed of the case on this issue, we need not consider the other issues raised by defendant.

Reversed and remanded for new trial.

KELLY, JUSTICE (concurring in part and dissenting in part).

I agree with the majority opinion that there was no evidence which would justify the return of a verdict of not guilty by reason of mental illness and would reverse on that ground. I would not, however, remand the case for a new trial on all issues. This case was tried to the court without a jury. In a trial de novo, the evidence would presumably be substantially the same and therefore judicial economy should dictate that a complete new trial could be pointless. More importantly, a trial de novo would re-

quire that family witnesses go through the ordeal of another trial with nothing to be served by it. The defendant had a fair trial; the prosecution had its day in court. The trial judge should now determine whether or not the defendant is guilty or not guilty of aggravated assault or some lesser included offense. After a trial de novo, the trial judge could do no more than that. I would remand the case for a new trial for a determination by the court below on that single issue.[1]

OTIS, JUSTICE (concurring in part and dissenting in part).
I concur in the opinion of Mr. Justice Kelly.

PETERSON, JUSTICE (concurring in part and dissenting in part).
I concur in the opinion of Mr. Justice Kelly.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] It should be noted that Minn. St. 632.06 facially provides that if this court reverses a judgment in a criminal case, "it shall either direct a new trial, or that the defendant be absolutely discharged, as the case may require." Because a remand for a determination on a single issue would, in my opinion, comply with the statute's seemingly restricted limitations, no comment on the question of whether that statute deals with substantive or procedural matters is necessary. If it deals with the former, it is the responsibility of the legislature, but making determinations in procedural matters is the responsibility of the judiciary.