Argued and submitted October 21, 1983, resubmitted In Banc October 3, reversed and remanded October 10, 1984

STATE OF OREGON,
*Respondent,*

*v.*

JERRY L. PETERSON,
*Appellant.*

(C82-11-38132; CA A27882)

689 P2d 985

Paul S. Petterson, Portland, argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

NEWMAN, J.

Van Hoomissen, J., dissenting.

## NEWMAN, J.

Defendant appeals from a judgment that found him "not responsible due to mental disease or defect" of burglary in the first degree. The judgment committed him to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a period of 20 years, a period that corresponds to the maximum term for Burglary I. ORS 161.327(1); 164.225(2). We reverse.

The indictment charged that defendant "unlawfully and knowingly" entered and remained in a dwelling "with intent to commit the crime of theft therein." ORS 164.225. Defendant notified the state that he would rely at trial on the defense of "partial responsibility." *Former* ORS 161.305; 161.309(2). He assigns as errors that the court imposed on him, over his objection, the defense of not responsible due to mental disease or defect, found that he presented a substantial danger to others, requiring commitment to a state mental hospital, determined that he would have been convicted of burglary in the first degree if he had been found responsible and committed him to the jurisdiction of PSRB for 20 years.

Defendant has a history of institutionalization at the MacLaren School for Boys, the Multnomah County Jail, the Multnomah County Correctional Institute, the Oregon State Hospital and Dammasch State Hospital. He suffers from chronic undifferentiated schizophrenia. On October 29, 1982, at 2:00 p.m. he was released from jail. Two hours later Charles Boer returned to his home and took a nap. He heard a noise in his hallway. He confronted defendant, who claimed to be Charles Boer. Defendant demanded an explanation for the real Charles Boer's presence. Boer called the police, who found defendant in bed with his shoes off and in possession of Boer's wallet. Defendant claimed to be Boer's father and said he was "between 100 and 400 years old."

Neither party challenges the court's finding that defendant was "able to aid and assist in his own defense and to understand the nature of the proceedings against him," *see* ORS 161.360,[1] and both parties accept it as a finding that

---

[1] ORS 161.360 provides:

"(1) If, before or during the trial in any criminal case, the court has reason to

defendant was competent to stand trial.

Defendant waived a jury trial and was tried by the court. The prosecutor stated:

> "The defense * * * is on the basis, not of a guilty by reason of mental disease or defect, but mental disease or defect that negates the intent element. In other words, the defense contends that that would result in a not guilty state with no possible commitment to psychiatric security or the Review Board. * * * *It is the state's contention that in this case the defendant is not guilty by reason of mental disease or defect. The state will be seeking to commit the defendant to the Psychiatric Review Board.*" (Emphasis supplied.)

The prosecutor argued that, although ORS 161.309(1) states that a defendant may not introduce evidence of mental disease or defect without prior notice, the state is not so limited. He also argued that the court may, over a defendant's objection, impose the defense:

> "The statement by the defendant that he had a specific intent to go in there, and we have a specific intent to take the wallet. It's an intent that's the product of a sick mind. That's why he's entitled to the mental disease or defect defense but he is not entitled to a no intent defense which would be the lesser one.

> "* * * [T]he state has the power to offer the evidence that the defendant is suffering from a mental disease and defect to the point that he is not responsible. Since we have that power inherent in the court's power, the Court's power must be on the ability of its own motion; or on the evidence, make the finding that the defendant suffers from a mental disease or defect such that he is not responsible for this activity. * * *

> "The state, of course, [h]as the obligation in all cases to do justice, and if the state has a case where the situation is a not responsible by reason of mental disease or defect, the state

---

doubt the defendant's fitness to proceed by reason of incompetence, the court may order an examination in the manner provided in ORS 161.365.

"(2) A defendant may be found incompetent if, as a result of mental disease or defect, he is unable:

"(a) To understand the nature of the proceedings against him; or

"(b) To assist and cooperate with his counsel; or

"(c) To participate in his defense."

would be violating its responsibility, its duty, as it were, to not seek that out.

"It's quite the same as if we found evidence of self defense in the course of an assault trial and refused to consider that.

"* * * [T]he state's position is that the state is entitled to present the evidence that shows that the defendant is not responsible by reason of mental disease or defect and that once the state puts that evidence in in conjunction with the reports, the evidence before the court establishes as a matter of law that the defendant is not responsible due to mental disease or defect, and therefore, the court should enter the judgment, notwithstanding the fact that notice was [not] filed."

Without objection from defendant, the state introduced police reports and a copy of a 1979 charge against him for another burglary on which he had been found not guilty due to mental disease or defect — a defense that he raised in that proceeding.

Defendant's counsel told the court:

"* * * We would be asking the court to find Mr. Peterson guilty of criminal trespass in the first degree. We have raised the defense of partial responsibility * * * in that we are negating the attempt to commit the crime of theft in the building that Mr. Peterson entered.

"The defense of partial responsibility or diminished capacity is allowed only in cases which allege an intentional mental state, such as burglary with the intent to commit the crime of theft therein.

"Therefore, I think the court could find Mr. Peterson guilty of criminal trespass in the first degree."[2]

In support of his defense of partial responsibility defendant introduced medical reports from Dammasch State Hospital and Oregon State Hospital.

Defendant argued that the court had no right to impose, over his objection, the defense of not responsible due

---

[2] ORS 164.255 provides:

"(1) A person commits the crime of criminal trespass in the first degree if he enters or remains unlawfully in a dwelling.

"(2) Criminal trespass in the first degree is a Class A misdemeanor."

The maximum penalty for criminal trespass is one year in jail.

to mental disease or defect, because it is an affirmative defense that only he may raise. He did not assert below any violations of either the Oregon or United States constitutions. The following exchange then took place:

"THE COURT: Well, there certainly is evidence of intent. The *fact that he had those items in his pocket* — the wallet — of the victim. I infer from that that he intended to take it.

"DEFENDANT'S COUNSEL: Well, that evidence comes under Mr. Peterson's mental problems. When he imagined that he was, in fact, Charles [Boer] that indicates that he doesn't have the intent to steal from Charles [Boer]. Rather, he was under the illusion that he was, in fact, Charles [Boer] and that's why he had the wallet.

"THE COURT: * * * That fact is, the defense would have to put that intent in or we wouldn't even be at issue. You've put it in. You are, in effect, raising that defense.

"DEFENDANT'S COUNSEL: Well, we are raising the defense of partial responsibility. We are not raising the defense of not guilty by reason of insanity. That is the defense the State is attempting to raise. My position is that the State cannot raise a defense.

"* * * * *

"THE COURT: But I would ask you this, Counsel. I'll put it to you very directly. If the prosecution had not introduced any evidence concerning defendant's mental condition, are you telling me that you would not produce any such evidence?

"DEFENDANT'S COUNSEL: Your Honor, I have introduced evidence of Mr. Peterson's mental condition. The defense I'm using is that of partial responsibility. Partial responsibility is a defense that may be used only in cases requiring intent.

"THE COURT: I understand that. Once you have put evidence in, Counsel, you can't characterize what the defense is. You've put it in; it's got to be. Your characterization doesn't limit the trier of fact on that issue."

The court did not find that the state had proved beyond a reasonable doubt that defendant had entered the victim's home with intent to commit the crime of theft. Rather, the court found that, *if* defendant were responsible, he had committed the crime of Burglary I. It also found, however, that defendant was not responsible.

■      The principal question, and one of first impression in Oregon, is whether a court, at the state's request, may impose the defense of not responsible due to mental disease or defect over a defendant's objection. The court asserted that "once you have put evidence in, Counsel, you can't characterize what the defense is" and "Your characterization doesn't limit the trier of fact on that issue." The state does not argue for this position. The defenses of nonresponsibility and of partial responsibility are distinct. The former is an affirmative defense, ORS 161.305, and a defendant has the burden of proof by a preponderance of the evidence. ORS 161.055(2) and (3); *see also State v. Dodson,* 25 Or App 859, 551 P2d 484, *rev den* (1976). As to the latter, the state retains the burden to establish the intent element of the crime.[3]

■■      A defendant cannot give notice of nonresponsibility and assert that it is a notice of partial responsibility. *See* ORS 161.304. The court must instruct the jury on the defense of nonresponsibility but not on the "defense" of partial responsibility. *State v. Booth,* 284 Or 615, 588 P2d 614 (1978). A finding of not responsible due to mental disease or defect may subject the defendant to the jurisdiction of the Board. ORS 161.327. A finding of partial responsibility does not. It may, however, result in conviction of a lesser included offense or an acquittal.

We find no statutory authority for the court, over a defendant's objection, to impose the defense, whether or not the state requests it. ORS 161.055(2) does not give that authority simply because it refers to the defense as being "raised at a trial," rather than raised *by the defendant* at trial. ORS 161.309 does not give that authority simply because it requires only a defendant to give notice before he can introduce evidence of nonresponsibility. Neither do we find that authority in ORS 161.025(2), which provides that the criminal laws shall be construed "to promote justice and to effect the purposes stated in subsection 1 of this section" and to "limit the condemnation of conduct that is criminal when it is without fault," in the light of specific statutes that govern the defenses of nonresponsibility and partial responsibility and

---

[3] Effective January 1, 1984, the legislature eliminated the statutory designation of partial responsibility as an affirmative defense for crimes committed after that date. *See* ORS 161.305 (1981), *amended by* Or Laws 1983, ch 800, § 2.

implement a defendant's opportunity to determine his own defense.[4]

Some courts have held, even in the absence of specific statutory authority, that they have the power under limited circumstances to impose the defense of nonresponsibility over a defendant's objection.[5] Some courts exercise that authority if they find that the defendant was not responsible at the time the crime was committed. *See Whalem v. United States,* 346 F2d 812 (DC Cir 1965), *cert den* 382 US 862; *United States v. Wright,* 627 F2d 1300 (DC Cir 1980). Other courts emphasize that the defendant must be unable at the time of trial to decide voluntarily and intelligently not to assert the defense of nonresponsibility. *See Frendak v. United States,* 408 A2d 364 (DC 1979); *State v. Jones,* 99 Wash 2d 735, 664 P2d 1216 (1983); *see also* Singer, *The Imposition of the Insanity Defense on an Unwilling Defendant,* 41 Ohio St L J 637, 647 (1980); Note, *The Right and Responsibility of a Court to Impose the Insanity Defense Over the Defendant's Objection,* 65 Minn L Rev 927 (1981).

In *Whalem v. United States, supra,* the United States Court of Appeals for the District of Columbia considered whether the trial court erred by not raising the defense of insanity, although both the defendant, convicted of robbery and attempt to commit rape, and his counsel informed the trial court that they did not wish to raise the defense. The court affirmed, but stated:

> "In our view, a defendant may not keep the issue of insanity out of the case altogether. * * * [H]e may not, in a proper case, prevent the court from injecting it." 346 F2d at 818.

---

[4] The court may not accept a plea of guilty or of no contest without first determining that a defendant's plea is voluntarily and intelligently made. ORS 135.390. It must address the defendant personally and determine that he understands the nature of the charge, ORS 135.385(1), and inform him of the rights he waives by pleading guilty or no contest, of the maximum possible sentence, of the authorization for different or additional penalties if he is found to be a dangerous offender and of the consequences if he is an alien. ORS 135.385(2). If he makes a plea of guilty or no contest, he must do so in person in open court. ORS 135.360. Defense counsel must ensure that it is defendant's decision to plead guilty or no contest. ORS 135.425.

[5] The Model Penal Code originally included a provision permitting a trial judge to raise the insanity defense. This provision was dropped as "too great an interference with the conduct of the defense." Comment to Model Penal Code § 4.03 (Tent draft No. 4, 1955).

This belief was based on the premise that

> "[O]ne of the major foundations for the structure of the criminal law is the concept of responsibility, and the law is clear that one whose acts would otherwise be criminal has committed no crime at all if because of incapacity due to * * * mental condition he is not responsible for those acts. If he does not know what he is doing or cannot control his conduct or his acts are the product of a mental disease or defect, he is morally blameless and not criminally responsible.
>
> "* * * * *
>
> "[W]hen there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case." 346 F2d at 818.

The court stated that whether the trial court should impose the defense depended on a combination of factors, including the strength of the defense and whether the defendant and his counsel were aware of and chose not to raise the defense. The court held that the trial judge did not abuse his discretion by not injecting the issue of insanity into the case.

In *Wright v. United States, supra,* the same court again considered whether the trial court abused its discretion in not raising the insanity defense on its own motion after the defendant, represented by counsel, informed the court that he would not rely on the defense. The defendant was convicted of destruction of government property. Following an evidentiary hearing, the trial court refused to raise the defense and the court affirmed. It stated, however:

> "* * * No defendant, whether acting *pro se* or through counsel, can restrain the court from considering whether the insanity defense should be raised.
>
> "* * * * *
>
> "We cannot abdicate to the defendant the judicial duty to explore the issue once sufficient questions are raised. Nonetheless, our reasoning does not disparage the importance of the defendant's preference to avoid the insanity defense." 627 F2d at 1310-11. (Footnote omitted.)

The court applied the *Whalem* analysis:

> "* * * By focusing attention on the quality of the defendant's pleading decision [the question of whether defendant's opposition to the defense is voluntary and intelligent], the government proposal tends to obscure society's obligation to

determine blame-worthiness before imposing sanctions." 627 F2d at 1312.

In *Frendak v. United States, supra,* the jury found the defendant guilty of first degree murder and of carrying a pistol without a license. At a succeeding "insanity" phase, the court raised the insanity defense over the defendant's objection and the jury found the defendant not guilty by reason of insanity. The District of Columbia Court of Appeals considered *Whalem* and held that a trial court may not impose the defense on a defendant found competent to stand trial if the defendant intelligently and voluntarily decides not to assert that defense. If the court finds a defendant competent to stand trial, it must then determine whether the defendant voluntarily and intelligently chooses not to assert the defense. Because the court found that it was unclear whether the defendant had made such a decision, it remanded the case for further proceedings.[6]

*Frendak* emphasized a "defendant's present desire not to raise the defense and * * * the current ability to make an intelligent choice" rather than the strength of the evidence supporting an insanity defense. 408 A2d at 374. The court listed several persuasive reasons why a defendant might reject an insanity defense: fear of a longer institutional commitment; objection to the treatment in a mental hospital; avoidance of the stigma of the insanity plea and its collateral consequences; assertion that the crime was a political or religious protest; or avoidance of an implied admission of guilt. 408 A2d at 376. The court concluded:

"In our view, these reasons substantially outweigh the

---

[6] In discussing how a trial court determines whether a decision not to assert the insanity defense was intelligently and voluntarily made, the *Frendak* court noted:

"In some instances, nonetheless, it may be sufficient for a trial judge to advise the defendant of the possible consequences of the insanity plea, become assured that the defendant understands those consequences by questioning the defendant about his or her reasons for rejecting the defense, and make a decision on the basis of the reasons given, the manner in which they are expressed, and any evidence of the defendant's mental capacity already in the record. In other cases, the judge still may have doubts after such an inquiry and may desire additional information. In those situations the judge may order psychiatric examinations to determine whether the defendant's mental condition has impaired his or her ability to decide whether to raise the defense. At this point, the judge may choose to appoint *amicus* counsel to present evidence concerning the defendant's mental capacity." 408 A2d at 380. (Footnote omitted.)

express purpose of *Whalem:* to ensure that some abstract concept of justice is satisfied by protecting one who may be morally blameless from a conviction and punishment which he or she might choose to accept. Because the defendant must bear the ultimate consequences of any decision, we conclude that if a defendant has acted intelligently and voluntarily, a trial court must defer to his or her decision to waive the insanity defense.

"It follows, however, that the underlying protective rationale of *Whalem* is sufficiently compelling that the trial court still must have the discretion to raise an insanity defense, *sua sponte,* when a defendant does not have the capacity to reject the defense." 408 A2d at 378. (Footnote omitted.)

In *State v. Jones, supra,* the defendant was convicted of assault. He pleaded not guilty, claiming self-defense. The trial court found the defendant competent to stand trial. It believed, however, that the defendant had a viable insanity defense without which he was likely to be convicted. At the prosecutor's request, and over the defendant's objection, the trial court entered an insanity plea and appointed amicus counsel to argue the insanity defense. The jury found that the defendant had committed the acts charged and was insane at that time, and he was sent to the state hospital by reason of insanity. The Washington Supreme Court vacated the conviction and commitment and remanded for a new trial. It held that the court erred because the plea of insanity was entered over the defendant's objection, although the court had found him competent to stand trial and made no inquiry whether his desire to forego the insanity plea was intelligent and voluntary. It also stated that the *Frendak* and *Whalem-Wright* approaches differ in "two important respects:"

"* * * First, the focus in *Frendak* is solely on *present* mental condition while much, if not most, of the D.C. Circuit's focus [in *Whalem*] is on the defendant's mental condition *at the time of the alleged offense.* * * * Second, the two approaches differ in the standard by which they assess the defendant's mental condition. * * * Under *Frendak,* the court focuses on competency to make decisions while, under the D. C. Circuit approach, the court focuses on legal insanity." 664 P2d at 1220. (Emphasis in original.)

*Jones* favored the *Frendak* approach, because it emphasizes a defendant's right to control his own defense. We

agree with that emphasis and find it consistent with the provisions of the Oregon criminal code.

*Jones,* contrary to *Frendak,* holds that competency to stand trial should be taken as competency to decide not to assert the defense, at least when a defendant is represented by counsel:

> "*Frendak's* conclusion, that the competency standards for waiver of the insanity defense and standing trial do differ, rests upon a shaky foundation. It is premised in large part on decisions holding that the level of competency necessary to plead guilty is greater than that necessary to stand trial, because the former requires an 'ability to make a reasoned choice among the alternatives presented.' *Sieling v. Eyman,* 478 F.2d 211, 215 (9th Cir.1973), cited in *Frendak,* at 380. *Sieling* and its progeny have been severely criticized, however, and do not represent the majority view. *See United States ex rel. Heral v. Franzen,* 667 F.2d 633, 637-38 (7th Cir.1981) and cases cited therein; *Note, Competence to Plead Guilty and To Stand Trial: A New Standard When a Criminal Defendant Waives Counsel,* 68 Va.L.Rev. 1139, 1140, 1148-51 (1982) * * *. We believe the better view is that both competency standards should require an ability to make necessary decisions at trial. *See, e.g., Note, Competence to Plead Guilty: A New Standard,* 1974 Duke L.J. 149, 169-70." 664 P2d at 1222.

We agree. Furthermore, *Frendak's* holding that the determination of competency to stand trial is "not intended to measure whether the defendant is also capable of making intelligent decisions on important matters relating to the defense," 408 A2d at 379, is not consistent with ORS 161.360.

■■　Here, the trial court found that defendant, who was represented by counsel, was "able to aid and assist in his own defense and to understand the nature of the proceedings against him" — that he was competent to stand trial. We hold, particularly in light of ORS 161.360, that competency to stand trial includes competency to choose whether to assert the defense of nonresponsibility.[7] Moreover, it is beyond dispute that if a defendant who is represented by counsel chooses not

---

[7] Regardless of the *dicta* in *State v. Jones, supra,* that there may be a "rarest of cases" in which the court may impose the defense of insanity over a defendant's objection, 664 P2d at 1222, that is not true in Oregon. *See* n 8, *infra.* ORS 161.370 provides a comprehensive statutory scheme for disposition if a defendant is not competent to stand trial.

to plead guilty, the court does not inquire if the defendant voluntarily and intelligently made that choice. We hold that the court need not inquire whether the defendant, if he is competent to stand trial and is represented by counsel, has voluntarily and intelligently chosen not to plead "not responsible due to mental disease or defect," a defense that under Or Laws 1983, ch 800, § 1, effective January 1, 1984, is labeled "guilty except for insanity."[8]

■■ The court erred when it imposed the defense of "not responsible due to mental disease or defect" over the objection of defendant, who was represented by counsel, had not raised that defense and had been found competent to stand trial. The judgment is reversed and the case remanded for a new trial. If the court determines that defendant is not now competent to stand trial, further proceedings will be governed by ORS 161.370.[9]

Reversed and remanded for a new trial.

**VAN HOOMISSEN, J.,** dissenting.

I would hold that the trial court could raise the issue of defendant's total lack of responsibility *sua sponte.* Therefore, I dissent.

Defendant was indicted for burglary in the first degree. After waiving a jury trial, he was tried to the court which found that, if he was responsible at the time of his act, he was guilty as charged beyond a reasonable doubt. The court

---

[8] In this respect, we depart from the reasoning in *Jones.* That court concluded:

"Thus, the only permissible inquiries when a defendant seeks to waive his insanity defense are whether he is competent to stand trial and whether his decision is intelligent and voluntary. If the court finds that the defendant is not competent to stand trial, trial must be stayed or dismissed as required by RCW 10.77.090. If the court finds that the defendant is competent to stand trial but that his decision to forgo an NGI plea is not intelligent and voluntary, it should provide him with whatever additional information or assurances are necessary to enable such a decision. In only the rarest of cases, if ever, will it be impossible to make the decision intelligent and voluntary and hence be necessary to enter an NGI plea sua sponte." 664 P2d at 1222-23. (Footnotes omitted.)

If, however, a defendant is not represented by counsel, an inquiry of the kind urged by *Jones* — whether the defendant's decision to forego the insanity plea was intelligent and voluntary—may be necessary. The court, however, still may not impose the defense over the defendant's objection.

[9] Because of the disposition of this case, we do not reach defendant's other assignments of error.

concluded, however, that, at the time he committed the act, he was not responsible by reason of mental disease or defect. ORS 161.095. Judgment was entered accordingly.

There is evidence in the record, admitted without objection, that supports the trial court's conclusion that defendant was not responsible at the time of his act. Indeed, defendant does not dispute that conclusion. Nevertheless, the majority holds that the court erred in considering evidence of defendant's total lack of responsibility, because he did not affirmatively raise that defense. As a matter of statutory interpretion and as a matter of common sense, the majority is wrong.

The majority result is not compelled by the statutes it cites.[1] The notice requirement of ORS 161.309 does not limit the state's introduction of evidence, only the defendant's. ORS 161.055(3) provides only that the state is not required to negate the defense unless it is raised by the defendant. Fairly construed, neither statute denies the trial court the right to raise the defense of total lack of responsibility *sua sponte.* Moreover, ORS 161.300 allows the admission of evidence that a defendant suffers from a mental disease or defect whenever that evidence is relevant to the issue of criminal intent. Here, that evidence is relevant because, if defendant was not responsible, he is legally blameless.

Although lacking express statutory authorization, the trial court's imposition of the defense of total lack of responsibility is consistent with both the statutes governing mental disease or defect and the stated purposes of the criminal code. When criminal statutes are not specific, we look to the general purposes of the criminal code. The legislature has directed that the criminal code "shall be construed according to the fair import of its terms, to promote justice and to effect the purposes stated in subsection (1) of [ORS 161.025]." ORS 161.025(2). Among the general purposes enumerated in ORS 161.025(1) is:

"(d) To define the act or omission and the accompanying

---

[1] In this court, defendant relies on the federal and state constitutions. At trial, he raised only statutory issues. Therefore, he may not rely on his constitutional arguments here. *State v. Evans,* 290 Or 707, 713, 625 P2 1300 (1981).

mental state that constitute each offense and *limit the condemnation of conduct as criminal when it is without fault.*" (Emphasis supplied.)

A defendant who is not responsible at the time of the commission of an offense is legally blameless. It would be inconsistent with the legislative purpose to allow the conviction of that person for even a lesser included crime, as defendant's counsel suggested to the trial court. I cannot comprehend how defense counsel, knowing that his client was not responsible at the time of his act, in good conscience could suggest to the trial court that his client could be convicted of any crime.

*ABA Standards, The Functions of the Trial Judge* § 1.1(a) (1972), states:

"The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial. The only purpose of a criminal trial is to determine whether the prosecution has established the guilt of the accused as required by law, and the trial judge should not allow the proceedings to be used for any other purpose."

*ABA Standards, The Prosecution Function* § 1.1(c) (1971), states:

"The duty of the prosecutor is to seek justice, not merely to convict."

In view of those admonitions, I fail to understand how the judge or the prosecutor could have acquiesced in the conviction of defendant for criminal trespass.

The issue was addressed in *Whalem v. US,* 346 F2d 812 (DC Cir), *cert den* 382 US 862 (1965). There, the court held that, when the facts indicate that the defendant may not have been responsible for his acts, he has no absolute right to prevent the injection of the sanity issue into the case:

"* * * One of the major foundations for the structure of the criminal law is the concept of responsibility, and the law is clear that one whose acts would otherwise be criminal has committed no crime at all if because of incapacity due to age or mental condition he is not responsible for those acts. If he

does not know what he is doing or cannot control his conduct or his acts are the product of a mental disease or defect, he is morally blameless and not criminally responsible. The judgment of society and the law in this respect is tested in any given case by an inquiry into the sanity of the accused. In other words, the legal definition of insanity in a criminal case is a codification of the moral judgment of society as respects a man's criminal responsibility; and if a man is insane in the eyes of the law, he is blameless in the eyes of society and is not subject to punishment in the criminal courts.

"In the courtroom confrontations between the individual and society the trial judge must uphold this structural foundation by refusing to allow the conviction of an obviously mentally irresponsible defendant, and when there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case. Just as the judge must insist that the *corpus delicti* be proved before a defendant who has confessed may be convicted, so too must the judge forestall the conviction of one who in the eyes of the law is not mentally responsible for his otherwise criminal acts. We believe then that, in the pursuit of justice, a trial judge must have the discretion to impose an unwanted defense on a defendant and the consequent additional burden of proof on the Government prosecutor." 346 F2d at 818.

In *State v. Pautz,* 217 NW2d 190 (Minn 1974), the Minnesota Supreme Court held that a trial judge has an obligation to consider defenses not raised by a defendant in order to facilitate the fair administration of criminal justice. There, the trial court raised the issue of sanity *sua sponte.* The Supreme Court stated:

"* * * Defendant challenges the right of the trial judge to raise on his own initiative a defense defendant had not affirmatively pursued. The trial judge has a function and a role in the fair administration of justice in our criminal law system. The trial judge in this case most admirably sought to fulfill his duties and obligations in this system. He raised a matter which could significantly promote a just determination of the trial. We affirm the actions of the trial judge in raising this issue." 217 NW 2d at 192. (Footnote omitted.)

However, because there had been insufficient evidence presented on the sanity issue, the case was remanded for a new trial.[2]

---

[2]Defendant argues that, should we conclude that the trial court's action was

In *Walker v. State,* 21 Md App 666, 321 A2d 170 (1974), the defendant attempted to withdraw his insanity plea after trial. The Maryland appellate court held that the trial court acted properly in refusing to permit him to so do. As to the trial court's authority, the court held:

> "* * * In sum, it is discretionary. It may be that after an accused has entered a plea of insanity as provided by statute the medical reports will not support the plea and trial strategy will require the withdrawal of the plea. Where, as here, however, the court has before it uncontradicted, competent evidence that the accused was insane at the time of the commission of the offenses, it would be a manifest injustice to allow the withdrawal of a plea of insanity in the face of such evidence." 321 A2d at 174.

In *State v. Fernald,* 248 A2d 754, 760 (Maine 1968), the Maine Supreme Court held that the trial court did not abuse its discretion in denying a murder defendant's motion to withdraw his defense of not guilty by reason of insanity where such a withdrawal could result in the conviction of a defendant whose mental condition would absolve him of any criminal responsibility.

Under the majority opinion, and if the court ultimately finds defendant guilty of criminal trespass, a blameless person will be convicted of a crime and, perhaps, sentenced to prison.[3] I find that unconscionable. If it is legally correct, it is morally wrong. If defendant was not responsible at the time of his act, he is blameless.[4]

Defendant has committed a seriously anti-social act. Society has a right to be protected from such acts. For that reason, the trial court properly placed defendant under the

---

permissible, we should remand for an assessment of his ability to waive the affirmative defense. Defendant did not ask the trial court to apply any particular standard to assess his waiver. Rather, he argued only that our statutes do not permit the imposition of the affirmative defense over his objection. Therefore, I would not consider his remand alternative.

[3]Criminal trespass in the first degree, ORS 164.255, is a Class A misdemeanor punishable by imprisonment for up to a year. ORS 161.615(1).

[4]In support of its analysis, the majority cites *Frendak v. United States,* 408 A2d 364 (DC 1979), which focuses on a defendant's *current* ability to make an intelligent and reasoned choice not to assert the insanity defense. The relevant inquiry should be whether defendant was suffering from a mental disease or defect *at the time the crime was committed.* If he was, he is legally blameless.

jurisdiction of the Psychiatric Security Review Board. Oregon's statutory scheme for the care of persons found guilty except for insanity, ORS 161.295 *et seq,* has been praised as a model for other jurisdictions. Our legislature's concern for the treatment of persons found guilty except for insanity, and the public's need for and right to expect protection from such persons, are evidenced by the legislature's continuing support for the Psychiatric Security Review Board and its balanced approach to the competing interests involved here.

In sum, the majority result is a perversion of justice. It has absolutely nothing to do with a search for truth or a fair trial. In a word, it is gamesmanship. Once again, common sense in the administration of criminal justice escapes us.

I have considered defendant's other assignments and conclude that they lack merit.

Gillette and Young, JJ., join in this dissent.